O

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA PATRICIA ARANDA, | Case No.  CV 14-2147-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**INTRODUCTION**

On March 25, 2014, plaintiff Martha Patricia Aranda filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision:  whether the administrative law

judge ("ALJ") properly considered the opinions of three of plaintiff's treating physicians. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-6; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-9.

Having carefully studied, inter alia, the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinions of plaintiff's treating physicians. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-three years old on her alleged disability onset date, is a high school graduate who completed two years of college. AR at 46, 73, 155, 181. She has past relevant work as an instructor, specifically as a community services teacher. *Id.* at 25, 65, 182, 188.

On May 23, 2011, plaintiff filed applications for a period of disability, DIB, and SSI due to lung disease. *Id.* at 155, 161, 177, 181. The Commissioner denied plaintiff's applications, after which she filed a request for a hearing.[1] *Id.* at 75-82.

On July 18, 2012, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 43-64, 70-71. The ALJ also heard testimony from Jeanine Metilidi, a vocational expert. *Id.* at 64-70. On October 23, 2012, the ALJ denied plaintiff's claims for benefits. *Id.* at 15-30.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since April 15, 2011, the alleged onset date. *Id.* at 26.

At step two, the ALJ found that plaintiff suffered from the following severe

---

[1] Plaintiff's case was not eligible for reconsideration by the Commissioner because it was designated as a prototype case. *See* AR at 73-74.

impairments: interstitial lung disease/pulmonary fibrosis and hypothyroidism. *Id.*

At step three, the ALJ found that plaintiff's impairments, individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined that plaintiff had the RFC to perform sedentary work with the limitations that plaintiff can: lift, carry, push, and pull up to ten pounds occasionally and frequently; stand/walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; frequently balance and climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, and crawl. *Id.* at 26-27. Plaintiff also must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. *Id.* at 27.

The ALJ found, at step four, that plaintiff was incapable of performing her past relevant work. *Id.* at 28.

At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that plaintiff could perform, including receptionist and customer service clerk. *Id.* at 29. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 29-30.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final

---

[2]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  decision of the Commissioner.

2  ### III.

3  ### STANDARD OF REVIEW

4  This court is empowered to review decisions by the Commissioner to deny

5  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

6  Administration must be upheld if they are free of legal error and supported by

7  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).

8  But if the court determines that the ALJ's findings are based on legal error or are

9  not supported by substantial evidence in the record, the court may reject the

10 findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257

11 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147

12 (9th Cir. 2001).

13 "Substantial evidence is more than a mere scintilla, but less than a

14 preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

15 "relevant evidence which a reasonable person might accept as adequate to support

16 a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

17 F.3d at 459.  To determine whether substantial evidence supports the ALJ's

18 finding, the reviewing court must review the administrative record as a whole,

19 "weighing both the evidence that supports and the evidence that detracts from the

20 ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

21 affirmed simply by isolating a specific quantum of supporting evidence.'"

22 *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243

23 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or

24 reversing the ALJ's decision, the reviewing court "'may not substitute its

25 judgment for that of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016,

26 1018 (9th Cir. 1992)).

27

28

# IV.

## **DISCUSSION**

Plaintiff argues that the ALJ failed to properly consider the opinion of three of her treating physicians: Dr. Jyoti S. Datta, Dr. Rick F. Pospisil, and Dr. Zain Vally. P. Mem. at 2-6. Specifically, plaintiff contends that the ALJ did not cite specific and legitimate reasons supported by substantial evidence for rejecting the doctors' consistent opinions that plaintiff was "at least temporarily disabled." *Id.* at 2, 5.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2); 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by

substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

A.    **Medical History**

Prior to her alleged onset date of April 15, 2011, plaintiff was treated in the San Pedro Peninsula Hospital emergency room on four occasions. AR at 18, 232-88. Plaintiff was not diagnosed with or treated for lung disease on any of these occasions. *Id.* at 18, 240, 250, 259, 277, 287, 288. On multiple occasions, plaintiff was treated with antibiotics for infections and with an inhaler for shortness of breath. *Id.* On the three occasions when plaintiff's blood oxygen level was tested, it was found to be within normal limits while breathing room air. *Id.* at 240, 259, 276.

On April 18, 2011 emergency room physicians diagnosed plaintiff with interstitial lung disease, hypothyroidism, and mild anemia. *Id.* at 18, 294, 296, 312-14. Plaintiff was admitted to the hospital, and provided steroids, a nebulizer, and oxygen. *Id.* at 18-19, 294. Plaintiff was released from the hospital on April 20, 2011 with steroids and supplemental oxygen to use at home because her walking oxygen levels fell below normal levels during testing. *Id.* at 19, 315. During an April 25, 2011 follow-up appointment, Dr. John Russo noted plaintiff's diminished breath sounds and regular heartbeat. *Id.* at 19, 533. The doctor recommended plaintiff seek an appointment with a pulmonary specialist and prescribed portable oxygen. *Id.* at 19, 533.

Between April 26, 2011 and April 27, 2012 plaintiff was seen by several

treating physicians including several emergency room physicians,[3] primary care physician Dr. John Russo, pulmonary specialist Dr. Jyotti S. Datta, and two Workers' Compensation physicians: Dr. Rick F. Pospisil and Dr. Zain Vally. *Id.* at 19-21, 226-31, 289-338, 346-538.  In July 2011, Dr. Mehran Sourehnissani, a Social Services doctor of internal medicine, examined plaintiff to evaluate her Social Security disability claims. *Id.* at 339-45.  In August 2011, plaintiff's medical files were further analyzed by Dr. L.C. Chiang, who conducted a non-examination Social Security case analysis. *Id.* at 346-52.

### 1.   Dr. Jyoti S. Datta and the June 1, 2011 Handwritten Note

In May 2011, pulmonary specialist Dr. Datta ordered and analyzed several medical tests.  AR at 19, 223-24, 229-31.  Dr. Datta diagnosed plaintiff with moderate restrictive lung disease and severe diffusion impairment. *Id.* at 19, 223-24, 229-31.  Dr. Datta initially determined plaintiff could return to work on June 6, 2011. *Id.* at 19, 228.  However, on June 1, 2011 Dr. Datta provided plaintiff with a handwritten note indicating she was under the doctor's care, being treated with oxygen, and was not to return to work for an additional three-month period. *Id.* at 19, 225-26.

During the months of June, July, and August 2011, plaintiff was examined by two Workers' Compensation physicians and one Social Security physician. *Id.* at 19, 339-91.  Beginning in September 2011 and continuing through January 2012, plaintiff was examined approximately monthly by Dr. Datta and treated for varying degrees of pulmonary disease or disorder. *Id.* at 20, 225-31, 393-401.

---

[3]   Two of plaintiff's emergency room visits during this period were not related to pulmonary issues.  AR at 19-21, 521-22, 467-71.  Although her third visit, on March 21, 2012, resulted in a continued diagnosis of pulmonary fibrosis and other ailments, her tests showed no signs of acute distress, a blood oxygen level of 98-99% on room air, clear lungs, a clean chest x-ray, and a normal CT of the lungs. *Id.* at 21, 409, 415, 417.

Although plaintiff was suffering from restrictive lung disease, by the end of October 2011 her blood oxygen level was normal at 96% and her CT scan was normal. *Id.* at 20, 400. In December 2011, plaintiff reported using oxygen only as needed. *Id.*

        2.    <u>Dr. Rick F. Pospisil and the June 20, 2011 Treating Physician's Initial Evaluation Report</u>

Dr. Pospisil conducted an initial evaluation of plaintiff's condition in response to her separate Workers' Compensation claim stemming from an allegation that her health problems are a result of exposure to chemicals and dust at her job. AR at 19, 384-91. The doctor's initial evaluation placed plaintiff on "temporary total disability" for thirty to forty-five days beginning on June 20, 2011. *Id.* at 19, 390-91. Dr. Pospisil transferred plaintiff to Dr. Zain Vally, a Workers' Compensation internist, "to aid in the diagnosis, prognosis, therapeutic management, determination of medical stability, and permanent residual loss and/or the examinee's fitness to return to work." *Id.* at 19, 389. Dr. Vally's findings are discussed further below.

        3.    <u>Dr. Mehran Sourehnissani's and Dr. L.C. Chiang's July and August 2011 Social Security Evaluations</u>

Dr. Mehran Sourehnissani's July 2011 examination of plaintiff resulted in a diagnosis of pulmonary fibrosis and hypothyroidism. AR at 339-45. The doctor defined plaintiff's RFC as

> limited to lifting and carrying 20 pounds occasionally and 10 frequently. Standing and walking are limited to six hours and sitting to six hours cumulatively. The claimant should avoid exposure to dust, poorly ventilated areas, extreme temperature changes and humidity.

*Id.* at 343; *see also id.* at 20.

Dr. L.C. Chiang's August 2011 Social Security case analysis of plaintiff's medical history, which did not involve an examination, resulted in a slightly different RFC. *Id.* at 346-50.  Dr. Chiang determined that plaintiff could:

Occasionally lift and/or carry 10 pounds

Frequently lift and/or carry 10 pounds

Stand and/or walk (with normal breaks) for a total of

at least 2 hours in an 8-hour work day

Sit (with normal breaks) for a total of

about 6-hours in an 8-hour workday

Push and/or pull unlimited, other than shown for lift and/or carry

Frequently climb ramp/stairs and balancing

Occasionally climb ladder/rope/scaffolds

Occasionally stoop, kneel, crouch, and crawl

Act with no manipulative, visual, or communication limitations

Avoid concentrated exposure to fumes, order, dust, gasses,

poor ventilation, etc.

*Id.*; *see also id.* at 20.  Dr. Chiang's report acknowledged that his conclusions are "significantly different" from the conclusions drawn by some of plaintiff's treating physicians. *Id.* at 350.  Dr. Chiang found the conclusion of some of plaintiff's treating physicians unsupported by evidence.  *Id.*  Dr. Chiang's final conclusion that "[b]y 4/2012, the claimant at least should be able to do a sedentary work" was based on the medical record's reflection of the improvement plaintiff's condition was showing in response to medication.  *Id.* at 347.

4.  Dr. Zain Vally and the January 22, 2012 Primary Treating Physician's Progress Report

Plaintiff was first referred to Dr. Vally by Dr. Pospisil in August 2011.  AR at 19, 389.  Dr. Vally's initial evaluation resulted in a diagnosis of plaintiff's

9

1  cushingoid appearance, fibrosis of the lungs, hypothyroidism, and unspecified

2  abdominal pain. *Id.* at 378. The status of plaintiff's disability and work

3  restrictions was deferred. *Id.* at 19, 378-79. In January 2012, Dr. Vally

4  reexamined plaintiff for his primary treating physician's progress report. *Id.* at

5  362. Plaintiff complained about "stress and anxiety," abdominal pain, and

6  shortness of breadth. *Id.* at 362-63. Plaintiff experienced a weight gain of twenty-

7  three pounds since her initial exam. *Id.* at 365. The doctor's diagnosis, however,

8  was unchanged from his initial report. *Id.* at 365. Plaintiff was placed on

9  Workers' Compensation temporary total disability status. *Id.* Dr. Vally

10 recommended that plaintiff continue on steroids and oxygen. *Id.* at 366. In later

11 visits with other doctors, plaintiff's heart and lungs tested with normal function

12 and appearance. *Id.* at 21, 409, 415, 417, 529; *see supra* n.3 (discussing plaintiff's

13 March 12, 2012 emergency room visit).

14 **B.   The ALJ's Findings**

15      The ALJ's summary and analysis of the medical evidence is not in dispute

16 with the exception of the judge's rejection of plaintiff's treating physicians'

17 classification of her disability. P. Mem. 2. The ALJ concluded that plaintiff

18 suffered from severe impairments of interstitial lung disease/pulmonary fibrosis

19 and hypothyroidism which prevented plaintiff from performing her past relevant

20 work as a community services teacher. AR at 26, 28. In defining plaintiffs RFC,

21 the ALJ "g[a]ve weight to the residual functional capacity assessment from the

22 Disability Determination Services medical consultant," Dr. Chiang, while

23 discounting the "*status designations* that the claimant was given for her Workers'

24 Compensation claim." *Id.* at 22, 24 (emphasis added). Plaintiff contends the ALJ

25 improperly rejected her treating physician's medical opinions by failing to

26 "carefully weigh[] and evaluate[] the substance" of the three opinions. The court

27 disagrees.

28

1     An "ALJ may not disregard a physician's medical opinion simply because it

2    was initially elicited in a state workers' compensation proceeding, or because it is

3    couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F.

4    Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citation omitted).  But an ALJ is not bound

5    to accept or apply a Workers' Compensation physician's status designation, such

6    as temporary total disability, because such terms of art are "not equivalent to

7    Social Security disability terminology." *Dawson v. Colvin*, 2014 WL 5420178, at

8    *5 (C.D. Cal. Oct. 23, 2014) (citing *Desrosiers v. Secretary of Health & Human

9    Services*, 846 F.2d 573, 576 (9th Cir. 1988); *Macri v. Chater*, 93 F.3d 530, 544

10   (9th Cir. 1996); *Booth*, 181 F. Supp. 2d at 1104); *see also* 20 C.F.R. § 404.1504.

11   An ALJ is required to "translate" such terms "into the corresponding Social

12   Security terminology in order to accurately assess the implications of those

13   opinions for the Social Security disability determination." *Booth*, 181 F. Supp. 2d

14   at 1106 (citation omitted).

15     The ALJ may give less weight to a disability rating designated under an

16   alternative rating system, such as Workers' Compensation, if the ALJ's

17   determination is based on "persuasive, specific, valid reason[s]" supported by the

18   record.  *See Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010) (citations

19   omitted) (affirming an ALJ's discounting of a VA disability rating in a Social

20   Security context).  Contrary to plaintiff's contention (P. Mem. 5.), an ALJ is not

21   required to "contact [p]laintiff's treating physicians for further clarification" when

22   the treating physician's opinion is clearly understood.  *Mayes*, 276 F.3d at 459-60

23   (citation omitted).  Nor does provision of a legally sufficient reason for

24   discounting or rejecting a medical opinion require the ALJ to recite the magic

25   words, "I reject this doctor's opinion because." *Magllanes v. Bowen*, 881 F.2d

26   747, 755 (9th Cir. 1989).

27     In the instant case, the ALJ noted the definition of disability under the

28

1  Social Security Act differs substantially from the definition under Workers'

2  Compensation, and carefully weighed and evaluated the treating physician's

3  opinions in light of this definition.  AR at 15, 22-24.

4              Disability [under the Social Security Act] is defined as the

5              inability to engage in any substantial activity by reason of any

6              medically determinable  physical or mental impairment or

7              combination of impairments that can be expected to result in

8              death or that has lasted or can be expected to last for a

9              continuous period of not less than 12 months.

10  *Id.* at 15.  The ALJ properly and accurately noted that the treating physicians'

11  designations of plaintiff as temporarily totally disabled or off work for purposes of

12  her Workers' Compensation claim do "not provide the necessary information or

13  evaluation required in connection with benefits under Social Security."  *Id.* at 24;

14  *see Lilly v. Astrue*, 2012 WL 4364267, at *3 (C.D. Cal. Sept. 24, 2012) (reasoning

15  Workers' Compensation physician's determination of temporary total disability

16  indicated plaintiff could not return to her immediately preceding job, "not that

17  [plaintiff] was precluded from all substantial gainful activity").  Contrary to

18  plaintiff's contention, it was not error for the ALJ to give no weight to the

19  Workers' Compensation status designations on this basis.

20      Of course, as stated above, the ALJ was not permitted to disregard entirely

21  the Workers' Compensation treating physicians' opinions for this reason.  But it is

22  clear from the record that the ALJ did not disregard their opinions.  Instead, she

23  carefully considered them among the other medical evidence in the record in

24  determining whether plaintiff was disabled within the meaning of the Social

25  Security Act.  *See* AR at 19-23.  After a lengthy "consideration of the totality of

26  the evidence," and in light of the continuous twelve-month requirement, the ALJ

27  determined plaintiff had no ailment or treatment that causes "greater functional

28  limitations for any continuous period of 12 months" than the limitations presented

1  in Dr. Chiang's RFC.  AR at 22.

2      Dr. Chiang's findings controvert plaintiff's treating physicians' reports.  *Id.*

3  at 350.  Therefore, in rejecting these opinions, the ALJ must provide specific and

4  legitimate reasons supported by substantial evidence.  *Lester*, 81 F.3d at 830.  The

5  ALJ's analysis reveals she rejected plaintiff's treating physicians' disability

6  findings within the Social Security context as not supported by objective medical

7  evidence, and instead accepted Dr. Chiang's non-examining assessment as

8  objectively supported by the record.  *See* AR at 22-24, 27-28.

9      1.    The Objective Record Does Not Support a Finding of Total Disability

10          Under the Social Security Act

11      An ALJ may discount the opinion of a treating physician when it lacks

12  support in the form of objective evidence and the physician's treatment notes fail

13  to provide medical evidence supporting the alleged limitation.  *Batson v. Comm'r*

14  *Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see Tommasetti v. Astrue*, 533 F.3d

15  1035, 1041 (9th Cir. 2008) (the incongruity between a physician's opinion and

16  treatment records is a specific and legitimate reason for rejecting the opinion).

17      The ALJ states plaintiff "did not present to any doctor, treating or

18  consulting, with the extreme physical and mental symptoms and functional

19  limitations she alleged for any continuous period of 12 months."  AR at 27.

20  Specifically, the medical records do not support a finding of end organ damage;

21  frequent or prolonged episodes or chronic symptoms of rhinitis or sinusitis; heart

22  disease; chronic or incapacitating chest pain or rib aches; extreme diarrhea;

23  abdominal disease, defect, condition or syndrome; long-term symptoms of anemia;

24  primary sleep disorder such as obstructive sleep apnea or insomnia; a primary

25  fatigue or chronic fatigue syndrom; objective spinal, joint, soft tissue, or cartilage

26  abnormalities; obesity; limitations on daily living, social functioning, or

27  concentration, persistence, and pace; or any medically determined mental

28  impairment.  *Id.* at 22-24.

1    Dr. Vally's August 2011 review of plaintiff's body systems revealed

2    pulmonary problems, but found plaintiff "does not experience chest pain, syncope,

3    palpitations, nausea, vomiting, diarrhea, constipation, blood in stool/urine, cough,

4    paroxysmal nocturnal dyspnea, vision changes, temperature intolerance, frequent

5    urination, fever, or night sweats." *Id.* at 363. In support of his disability

6    designation, Dr. Vally made no finding of mental illness, acute distress, severe

7    fatigue, or inability to ambulate with oxygen. *Id.* at 21, 364-66.

8    Neither Dr. Datta's nor Dr. Pospisil's temporary total disability diagnoses,

9    alone or in combination, spanned a twelve-month period. *Id.* at 19. Dr. Datta's

10   designation was limited to four months and Dr. Posisil's was limited to a

11   maximum of 45 days. *Id.* Dr. Vally's January 22, 2012 progress report modifies

12   plaintiff's disability status from deferred to total temporary disability. AR at 21,

13   365. But as the ALJ notes, the report indicates that plaintiff's shortness of breath

14   is "improving with oxygen and steroid." *Id.* at 19, 363. Dr. Chiang's final

15   conclusion that "[b]y 4/2012, the claimant at least should be able to do a sedentary

16   work" was based on the medical record's reflection of the improvement plaintiff's

17   condition was showing in response to medication. *Id.* at 22, 347. "Impairments

18   that can be controlled effectively with medication are not disabling for the purpose

19   of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*,

20   439 F.3d 1001, 1006 (9th Cir. 2006).

21   When plaintiff was examined in the emergency room on March 21, 2012,

22   her tests showed no signs of acute distress, a blood oxygen level of 98-99% on

23   room air, clear lungs, a clean chest x-ray, and a normal CT of the lungs. *Id.* at 21,

24   409, 415, 417. Although plaintiff requested a prescription for oxygen from Dr.

25   Russo on April 27, 2012, there are no notes or updated tests indicating oxygen was

26   medically necessary. *Id.* at 21-22, 50, 531. The medical records do not support a

27   finding that plaintiff was totally disabled under the Social Security Act, and

28   plaintiff's treating physicians' notes fail to provide medical evidence supporting a

1  diagnosis of extreme fatigue, muscle aches, and supplemental oxygen dependance
2  due to lung disease for any continuous twelve months period.

3        2.      Dr. Chiang's Findings Are Supported in the Record by Substantial
4                Evidence

5        An ALJ may give weight to a non-examining physician's opinion when the
6  doctor's findings "are supported by other evidence and consistent with [the
7  record]." *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995). "The opinions
8  of non-treating or non-examining physicians may also serve as substantial
9  evidence when the opinions are consistent with independent clinical findings or
10 other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.
11 2002). But the opinion of a non-examining physician, standing alone, cannot
12 constitute substantial evidence. *Widmark*, 454 F.3d at 1067 n.2; *Morgan*, 169
13 F.3d at 602; *see also Erickson*, 9 F.3d at 818 n.7. Dr. Chiang's findings do not
14 stand alone; his conclusions are supported by the record and the internal medicine
15 examination conducted by Dr. Sourehnissani's. AR at 22-26, 28, 343.

16       Plaintiff showed no signs of distress during Dr. Sourehnissani's
17 examination. *Id.* at 19, 340. Her eyes, ears, nose, throat, and heart beat and
18 breathing all appeared normal. *Id.* at 19, 340-41. Her lungs were clear with
19 normal blood oxygen levels. *Id.* She walked normally and was able to mount and
20 dismount the examining table without difficulty. *Id.* at 19, 342. She had mild
21 cushingoid features as a result of her treatment with steroids and was diagnosed
22 with pulmonary fibrosis and hypothyroidism. *Id.* at 19, 342-43. After a complete
23 examination, Dr. Sourehnissani determined plaintiff could carry and lift twenty
24 pounds occasionally and stand or walk up to six hours in an eight-hour workday.
25 *Id.* 19, 25, 342-43.

26       After a review of plaintiff's medical history, Dr. Chiang's RFC was
27 somewhat more restrictive than Dr. Sourehnissani's. *Id.* at 20, 25, 346-52. Dr.
28 Chiang recommended limiting lifting and carrying to ten pounds and limiting

standing or walking to two hours in an eight-hour workday. *Id.* Dr. Chiang noted tests in the record indicated plaintiff was responding to treatment and her symptoms were improving. *Id.*

In sum, the ALJ translated the treating physician's disability status designations into corresponding Social Security terminology in order to accurately assess the implications of the opinions in the context of plaintiff's Social Security claims. The ALJ provided specific and legitimate reasons supported by substantial evidence for giving little weight to plaintiff's treating physicians' opinions, and instead giving greater weight to Dr. Chiang's opinion. Accordingly, the ALJ did not err in rejecting the opinions of Dr. Datta, Dr. Pospisil, and Dr. Vally that plaintiff was "at least temporarily disabled."

## V.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: May 20, 2015

_____
SHERI PYM
United States Magistrate Judge